# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| STEVE SHUBIN, et al., | No. C 15-01401 LB |
| Plaintiffs, | **ORDER (1) GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM, (2) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION TO STRIKE, AND (3) DENYING AS MOOT DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL MATERIALS** |
| v. | |
| FARINELLI FINE ANTIQUES CORP., et al., | |
| Defendants. | |
| _____/ | [Re: ECF Nos. 14, 15, 22] |

### INTRODUCTION

Steve Shubin and Kathy Shubin sued two individuals—Dorian Lisbona and Efraim Shoua—and two entities—Farinelli Fine Antiques Corporation and Shoua Lisbona LLC—for fraud-related claims arising out of the Shubins' purchases of art and antiques, which the Shubins allege are fake. (Complaint, ECF No. 1 at 6-46.[1]) The defendants answered the Shubins' claims and also filed counterclaims against the Shubins and another individual, Shaul Harosh. (Answer, ECF No. 4; Counterclaims, ECF No. 6.) The Shubins now move to dismiss one of those counterclaims—for conspiracy to commit extortion—and to strike it under California's anti-SLAPP statute. (Motion to Dismiss, ECF No. 15; Motion to Strike, ECF No. 15.) The court grants the Shubins' motion to

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents

dismiss, and denies without prejudice and as premature their anti-SLAPP motion.[2]

**STATEMENT**

The Shubins, who are residents of Texas, sued the defendants in California state court. (*See* Complaint, ECF No. 1 at 6-46.) The entity defendants are California corporations with their principal places of businesses in California, and the individual defendants are residents of California. (*Id.* ¶¶ 5-9.) The Shubins bring against each of the defendants the following claims: (1) fraud and deceit; (2) negligent misrepresentation; (3) civil RICO; (4) unfair competition; (5) breach of oral contract; and (6) violation of Article 6, Section 458 of the San Francisco Police Code. (*Id.* ¶¶ 3-4, 15-93.) The gist of their complaint is that they purchased from the defendants, on multiple occasions since 2008, art and antiques that the defendants told them were authentic and valuable but that, upon closer examination and appraisal, actually are inauthentic and not worth nearly what the Shubins paid for them. In essence, the defendants defrauded them.

The defendants deny this, and they also bring counterclaims against the Shubins and one of their former employees, Israeli resident Shaul Harosh. (Counterclaims, ECF No. 6.) They bring the following counterclaims: (1) breach of contract (against the Shubins only); (2) breach of the covenant of good faith and fair dealing (against the Shubins only); (3) good and services rendered (against the Shubins only); (4) attempted extortion (against Mr. Harosh only); and (5) conspiracy to commit extortion (against both the Shubins and Mr. Harosh). (*Id.* ¶¶ 43-79.)

At issue here is the defendants' fifth counterclaim for conspiracy to commit extortion. In relation to this counterclaim, the defendants allege that Mr. Harosh, who is a known and convicted extortionist, contacted the Shubins around the time that the Shubins began to suspect that the art and antiques they purchased were not authentic, and that sometime thereafter the Shubins shared with Mr. Harosh the results of an appraisal that the Shubins had done on their purchases. (*See id.* ¶¶ 69-79.) Mr. Harosh then used those results, along with the defendants' customer list, to try and extort

---

[2] The defendants have not properly served third-party defendant Shaul Harosh. (See Order Denying Request for Entry of Default, ECF No. 29.) He thus is not a "party" from whom the undersigned needs consent to issue this order. *Cf. Ornelas v. De Frantz*, C 00-1067 JCS, 2000 WL 973684, at *2 n.2 (N.D. Cal. June 29, 2000) (unserved defendants are not "parties" for consent purposes) (citing *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995)).

hundreds of thousands of dollars from the defendants. (*See id.*) The defendants allege that the Shubins knew or should have known about Mr. Harosh's prior extortion attempts (because the defendants' counsel told them about it), that the Shubins gave Mr. Harosh the results of the appraisal anyway, and thus they conspired with Mr. Harosh to extort money from them. (*See id.*)

The Shubins move to dismiss the defendants' conspiracy counterclaim because it is insufficiently pled, and even if it is not, their conduct is protected under California's so-called litigation privilege and their First Amendment right to free speech. (Motion to Dismiss, ECF No. 14.) They also move to strike the counterclaim pursuant to California's anti-SLAPP statute and to recover their attorney's fees and costs in relation to that motion. (Motion to Strike, ECF No. 15.)

The court held a hearing on the matter on May 28, 2015. (5/28/2015 Minute Order, ECF No. 28.)

**ANALYSIS**

**I. MOTION TO DISMISS**

**A. Legal Standard**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

1  If the court dismisses the complaint, it should grant leave to amend even if no request to amend
2  is made "unless it determines that the pleading could not possibly be cured by the allegation of other
3  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc.*
4  *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party
5  repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*
6  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
7  district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
8  with leave to amend).

### B. Application

The Shubins first argue that the defendants' conspiracy claim simply is insufficiently pled. Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." *Id.* at 511 (citation omitted).

Under California law, conspiracy has three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (Cal. Ct. App. 1995). The first element can be broken down into "three sub-elements: (i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013) (citing *Kidron*, 40 Cal. App. 4th at 1583); *see also Schick v. Lerner*, 193 Cal. App. 3d 1321, 1328 (Cal. Ct. App. 1987) ("The *sine qua non* of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective."). "[K]nowledge of the scheme's unlawful purpose . . . may be inferred from the surrounding circumstances, including the nature of the acts done, the relation of the parties, and the interests of

4

the defendants." *People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal. App. 4th 102, 137-38 (Cal. Ct. App. 2003). But "[a]n inference must flow logically from other facts established in the action." *Kidron*, 40 Cal. App. 4th at 1582 (citing *People v. Austin*, 23 Cal. App.4th at 1604). Civil conspiracy "cannot be established by suspicions." *Id.* (internal quotation marks omitted); see *Wisdom v. Katz*, 539 Fed. App'x. 704, 705 (9th Cir. 2013) (conclusory allegations of conspiracies are insufficient to support such claims) (citing *Kidron*, 40 Cal. App. at 1581-82).

Here, the defendants' conspiracy allegations against the Shubins do not meet this standard. As for factual allegations, the defendants allege that Mr. Harosh contacted the Shubins; the Shubins were told by the defendants' counsel that the defendants' believed that Mr. Harosh had extorted them in the past; the Shubins shared with Mr. Harosh the results of their appraisal; Mr. Harosh contacted Mr. Lisbona and demanded that Mr. Lisbona pay him hundreds of thousands of dollars or else he would "kill" the defendants' sales with the Shubins and others; and Mr. Harosh said that he could persuade the Shubins to settle their dispute with the defendants if the defendants did so. (*See* Counterclaims ¶¶ 69-79.)

Interspersed among these factual allegations are conclusory ones regarding the Shubins' intent and agreement to join and knowledge of a conspiracy to commit extortion. The defendants argue that

> the Shubins have cooperated with Harosh and intended to aid in his unlawful plan to extort money and concessions from [the defendants] by providing and continuing to provide information and counsel to Harosh, including, but not limited to, copies of appraisals of items which they had purchased from Farinelli, all of which the Shubins knew or should have known would be used by Harosh in his continuing efforts to extort money from [the defendants].

(*Id.* ¶ 73.) They also allege that

> [t]he Shubins knew, should have known and/or were aware of Harosh's efforts to extort money from [the defendants], as they were notice of his prior conviction for attempted extortion, the prior restraining orders and of his recent efforts to contact Farinelli's customers in order to harm [the defendants] by killing Farinelli's sales. Nothwithstanding this knowledge, the Shubins agreed to and intended to communicate with, collude with and share information with Harosh, all in furtherance of the unlawful attempts to extort money or gain concessions from [the defendants].

(*Id.* ¶ 77.) The problem is that there are no facts to support these allegations. There are no factual allegations about the Shubins and Mr. Harosh explicitly entering into a conspiracy to extort money from the defendants, and the factual allegations that the defendants do make do not infer such an

5

agreement either. It cannot be inferred from the allegation that the Shubins gave Mr. Harosh the results of an appraisal that the Shubins knew that Mr. Haroush intended to use those results to extort money from the defendants or that they intended that he do so. It also cannot be inferred from the allegation that the defendants' counsel told the Shubins that Mr. Harosh was an extortionist. This is especially true when the Shubins by that time already believed that the defendants were fraudsters; from their point of view, the defendants' attempt to paint Mr. Harosh in a bad light likely was met with suspicion, not open acceptance.

This is not to say that there will not be any evidence to support such a claim. There just are not supportable factual allegations to support such a claim at this time. In their motion, the Shubins argue that the defendants' conspiracy claim should be dismissed with prejudice because, based on the allegations made, the claims fails because the Shubins' communication with Mr. Harosh is protected under California's so-called litigation privilege and their First Amendment right to free speech. But at this stage, and given the spare allegations, the court is not so sure. This is the defendants' first attempt in alleging this counterclaim. Plus, it could turn out that, after discovery, the defendants could allege facts (as opposed to conclusions) bearing upon the Shubins' intent and agreement to join and knowledge of a conspiracy to commit extortion. In these circumstances, when the defendants' allegations simply do not suggest a conspiracy, it seems premature to consider the Shubins' litigation privilege and First Amendment arguments, both of which hinge upon what the Shubins and Mr. Harosh communicated to each other. The Shubins ask the court to say, now, that the defendants will be unable to allege conduct that would take the Shubins' conduct out from the protections of the litigation privilege or the First Amendment. The court cannot do that. Accordingly, the court will grant the Shubins' motion and dismiss the defendants' conspiracy claim, but it will dismiss it without prejudice. The court will not allow the defendants to re-allege it at this time. Instead, as the court explained at the hearing, the court will allow the defendants to move for leave to file amended counterclaims if and when the defendants learn more facts or evidence to support a conspiracy claim. If the defendants so move, the Shubins may make their litigation privilege and First Amendment arguments again.

**II. MOTION TO STRIKE**

Because the court dismisses the defendants' conspiracy claim without prejudice, the court finds the Shubins' motion to strike it and for attorney's fees to be premature.[3] Considering the anti-SLAPP motion at this time would require the court to determine whether the Shubins have made a threshold showing that the defendants' conspiracy claim arises from acts in furtherance of the Shubins' right of petition or free speech under the United States or California constitutions in connection with a public issue and whether the defendants have demonstrated a probability of prevailing on the claim. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002). As the court explained above, the court cannot do that now, and the defendants may be able to allege more facts at a later date.

The court recognizes, however, that the California's anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c). In this situation, courts in this district have denied as moot a motion to the extent it seeks to strike the particular claim and have denied the motion without prejudice to extent that it seeks attorney's fees and costs. *See*, *e.g.*, *Art of Living Found. v. Does 1-10*, No. 5:10-cv-05022-LHK, 2012 WL 1565281, at *25 (N.D. Cal. May 1, 2012); *Plevin v. City and County of San Francisco*, No. C 11-02359 CW, 2011 WL 324036, at *5 (N.D. Cal. July 29, 2011). Those courts allowed the moving party to bring its anti-SLAPP attorney's fees motion at the end of the case, after judgment was entered, when other attorney's fees motions would be filed. *See Art of Living*, 2012 WL 1565281, at *25; *Plevin*, 2011 WL 324036, at *5; *see also Plevin v. City and County of San Francisco*, No. C 11-02359 MEJ, 2013 WL 2153660 (N.D. Cal. May 16, 2013) (order granting in part and denying in part anti-SLAPP attorney's fees motion). The court believes this is an appropriate course of action in this case, too.[4] The parties may make any arguments for or against

---

[3] The defendants also filed an administrative motion seeking leave to file additional documents in support of their opposition to the Shubins' anti-SLAPP motion. (Administrative Motion, ECF No. 22.) Because the court denies as premature the Shubins' anti-SLAPP motion to the extent that it asks the court to strike the defendants' conspiracy claim, the court denies the defendants' administrative motion as moot.

[4] The appropriate course of action would be different if this court was dismissing the defendants' conspiracy counterclaim with prejudice, as it would be clear that it fails as a matter of

7

the application of the anti-SLAPP statute if the Shubins file an anti-SLAPP motion later in this action.

## CONCLUSION

For the reasons explained above, the court grants in part the Shubins' motion to dismiss. The court dismisses without prejudice the defendants' fifth counterclaim for conspiracy. The defendants' may not re-allege it at this time. If and when the defendants learn more facts or evidence to support a conspiracy claim, they may move for leave to file amended counterclaims. If the defendants so move, the Shubins may make their litigation privilege and First Amendment arguments again. The court also denies without prejudice the Shubins' anti-SLAPP motion as premature. The Shubins' may file another anti-SLAPP motion for attorney's fees and costs at the conclusion of this litigation.

**IT IS SO ORDERED.**

Dated: May 29, 2015

LAUREL BEELER
United States Magistrate Judge

---

law. *See White v. Lieberman*, 103 Cal. App. 4th 210, 220 (Cal. Ct. App. 2002) (because a party who prevails in an anti-SLAPP motion is entitled to attorney's fees, the trial court erred in determining that a defendant's anti-SLAPP motion was moot because where the trial court sustained the defendant's demurrer without leave to amend); *see also Collins v. Allstate Indem. Co.*, 428 Fed. App'x 688, 690 (9th Cir. 2011) (the district court erred in denying the defendant's motion to strike under California's anti-SLAPP statute where the district court dismissed the plaintiff's claims without leave to amend) (citing *White*, 103 Cal. App. 4th at 220); *Gressett v. Contra Costa County*, No. C-12-3798 EMC, 2013 WL 2156278, at *33 (N.D. Cal. May 17, 2013) ("Notably, a court must consider an anti-SLAPP motion even if it dismisses the underlying claim without leave to amend, as a successful anti-SLAPP motion results in the award of fees.") (citing *Collins*, 428 Fed. App'x at 690; *White*, 103 Cal. App. 4th at 220).